IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| NANCIANN DELAYO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| MIDLAND FUNDING, LLC, | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC., TRANS UNION, LLC, & | ) | |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

---

COMES NOW the Plaintiff, by and through her attorney, and avers against the Defendants the following:

<u>INTRODUCTION</u>

1. The Plaintiff seeks damages under the Fair Debt Collection Practices Act and Fair Credit Reporting Acts for Defendants' reporting and seeking collection of a debt the Plaintiff did not owe and having accessed the Plaintiff's credit reports with no legitimate basis for doing so.

<u>PARTIES</u>

2. Plaintiff is a resident citizen of Baldwin County, Alabama.

3.  Plaintiff is a "consumer" as defined by both the Fair Debt Collection Practices Act and the Fair Credit Reporting Act.

4.  Defendant Midland Funding, LLC ("Midland") is a California corporation whose principal place of business is 8875 Aero Dr, Ste 200, San Diego, CA 92123.

5.  Defendant Midland Credit Management, Inc. ("MCM") is a California corporation whose principal place of business is 8875 Aero Dr, Ste 200, San Diego, CA 92123.

6.  The principal purpose of Midland Funding and MCM is the collection of debts using the mails and telephone, and these two regularly attempt to collect debts alleged to be due another.

7.  Midland Funding and MCM are "debt collectors" according to 15 U.S.C. §1692a(6).

8.  Midland Funding and MCM are both "users of consumer reports" and "furnishers of information to consumer reporting agencies" as those terms are defined by 15 U.S.C. §1681a, and 12 C.F.R. § 41.41(c) & §222.41(c).

9.  Trans Union, LLC ("Trans Union") is a foreign corporation engaged in the business of compiling and selling credit reports relating to consumers, and whose principal place of business is 555 W. Adams St, Chicago, IL 60661.

10. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f), as it regularly assembles and evaluates credit information on consumers in the United States for the purpose of creating and selling consumer reports.

11. Equifax Information Services, LLC ("Equifax") is a foreign corporation engaged in the business of compiling and selling credit reports relating to consumers, and

whose principal place of business is 1550 Peachtree St NW, Atlanta, GA 30309.

12. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f), as it regularly assembles and evaluates credit information on consumers in the United States for the purpose of creating and selling consumer reports.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 15 U.S.C. §1692k(d) to hear Plaintiff's FDCPA claims in this matter and 15 U.S.C §1681p to hear Plaintiff's FCRA claims.

14. This Court has personal jurisdiction over the Defendants because the Defendants have engaged in direct communications attempting to collect debts from Alabama resident citizens dwelling within this state.

15. Venue is proper as substantially all of the events or omissions giving rise to the Plaintiff's claims occurred within this district.

## FACTUAL ALLEGATIONS

16. At all times relevant to this proceeding, Midland and MCM were acting in an attempt to collect from the Plaintiff a debt they claimed had been owed to Target National Bank.

### The State Court Collection Suit

17. On or about July 16, 2014, Midland filed a lawsuit, Case 05-DV-2014-900811, ("the Collection Suit") in the District Court of Baldwin County.  A copy of the Complaint in that case is attached as Exhibit A.

18. The complaint in Midland's lawsuit against the Plaintiff stated that the Plaintiff owed Midland $5,882.96.

19. The Plaintiff did not owe Midland $5,882.96.

20. The Plaintiff answered the Collection suit denying Midland's allegations. A copy of her Answer is attached as Exhibit B.

21. During September 2014, Midland reported to consumer reporting agencies that she actually owed $6,896 to Midland, and was past due for $6,896.

22. After having received the Plaintiff's clear answer denying liability on the account, Midland failed to report to the consumer reporting agencies that the debt was disputed.

23. During August of 2014, the Plaintiff notified TransUnion and Equifax that she disputed liability on the Midland account and requested that such account be deleted from her reports.

24. TransUnion and Equifax did not delete the account from her reports.

25. The Collection Suit was set for trial on March 22, 2016.

26. On that same date, the Baldwin County District Court conducted a trial in the Collection Suit and ruled in Ms. Delayo's favor. A copy of that court's judgment is attached as Exhibit C.

27. The verdict in Plaintiff's favor means that she does not owe the money claimed by Defendant Midland.

28. The state court ruling was a final judgment.

29. The final judgment was not appealed.

30. There is no avenue of appeal for Midland of this judgment, as the time to appeal has passed.

31. Midland knew it had lost the lawsuit.

32. Midland is not the owner of the alleged debt.

33. After losing the lawsuit, Midland continued to report to one or more credit reporting agencies that Plaintiff owed this money and was "past due" for over $6,800.

**Plaintiff's Attempts to Correct Her Credit Report**

34. In the summer of 2016, the Plaintiff realized that, despite the resolution of the Collection Suit in her favor, Midland was still reporting to the consumer reporting agencies that she owed them $6,896.

35. On or about August 18, 2016, the Plaintiff sent Equifax a letter disputing the Midland account and demanding that it be removed from her report.  The Plaintiff also sent Equifax a copy of the state court judgment in her favor.  A copy of the letter is attached as Exhibit D.

36. Equifax received the Plaintiff's August 2016 dispute letter.

37. On or about August 18, 2016, the Plaintiff sent Trans Union a letter disputing the Midland account and demanding that it be removed from her report.  The Plaintiff also sent Trans Union a copy of the state court judgment in her favor.  A copy of the letter is attached as Exhibit E.

38. Trans Union received the Plaintiff's August 2016 dispute letter.

39. Trans Union and Equifax had a legal duty to forward the Plaintiff's dispute to

Midland, along with all relevant information needed to reinvestigate the Plaintiff's dispute.

40. Upon information and belief, Trans Union and Equifax did forward the Plaintiff's dispute to Midland.

41. Midland had all the information it needed to realize that it had no right to seek $6,896 from the Plaintiff.

42. Midland had all the information it needed to know that it had no right to report that the Plaintiff owed it $6,896 and that she was "past due" $6,896.

43. Midland knew that it had no enforceable account with the Plaintiff.

44. After receiving Plaintiff's dispute, Midland continued to report to consumer reporting agencies that Plaintiff owed it $6,896.

45. MCM obtained a copy of the Plaintiff's Trans Union credit report on or about July 13, 2016 – nearly four months after it lost its Collection Suit against the Plaintiff.

46. MCM's stated purpose for requesting the Plaintiff's credit report was for "Collection."

47. MCM certified to at least one consumer reporting agency that its permissible purpose to obtain the Plaintiff's credit report was for an "account review."

48. Upon information and belief, MCM was at all times acting on Midland's behalf.

49. At that point, neither Midland nor MCM had the right to seek Plaintiff's credit report for "collection" purposes, because it had no account which it could collect from the Plaintiff.

50. Upon information and belief, Midland and/or MCM certified to Trans Union tha it needed to see the Plaintiff's report for an "account review."

51. In July of 2016, neither Midland nor MCM had any enforceable account with the Plaintiff to review.

52. Neither Midland no MCM had any right to see the Plaintiff's credit report for an "account review" purpose.

53. Neither Midland nor MCM had any legitimate business need to see the Plaintiff's credit report.

54. The Plaintiff never initiated any business transaction with Midland or MCM.

55. These inquiries into the Plaintiff's credit reports were never authorized by the Plaintiff.

56. Midland and MCM furnished inaccurate information to consumer reporting agencies, which were reflected in the Plaintiff's credit reports.

57. Midland and MCM inaccurately reported:

    (a) that Plaintiff owed Midland $6,896;

    (b) that Plaintiff was $6,896 "past due" on a debt to Midland.

58. Trans Union and Equifax inaccurately reported, *inter alia:*

    (a) that the Plaintiff owed Midland $6,896;

    (b) that the Plaintiff was  $6,896 "past due" on a debt to Midland;

    (c) that Midland had an enforceable claim against the Plaintiff for $6,896.

59. After receiving the Plaintiff's August 2016 dispute letters, Trans Union and Equifax published reports regarding the Plaintiff which contained the inaccurate information.

60. Numerous people and businesses saw the reports which contained inaccurate

information regarding the Plaintiff and Midland's unauthorized July 2016 credit inquiry.

61. This led to numerous adverse actions against the Plaintiff.

62. For example:

(a) On November 13, 2016, GM Financial denied Plaintiff's application to buy a car, citing the Equifax credit report as influencing their decision to deny her;[1]

(b) On September 15, 2016, Regions Bank denied the Plaintiff's credit application, citing the Equifax credit report as influencing their decision to reject her;[2]

(c) On November 9, 2016, Ally Financial denied the Plaintiff's application to purchase a car, citing the Trans Union report as influencing their decision to reject her;[3]

(d) On October 24, 2016, SunTrust Bank denied the  Plaintiff's application to buy a car, citing the Equifax credit report as influencing their decision to deny her;[4]

(e) On October 27, 2016, BB&T Dealer Finance denied the Plaintiff's application to purchase a vehicle, citing the Equifax report as influencing their decision to deny her application.[5]

(f) On November 10, 2016, Independent Bank denied the Plaintiff's application to purchase a vehicle, citing the Trans Union report as its reason for denying the Plaintiff's application;[6]

---

1   *See Exhibit F.*
2   *See Exhibit G.*
3   *See Exhibit H.*
4   *See Exhibit I.*
5   *See Exhibit J.*
6   *See Exhibit K.*

(g) On October 28, 2016, BBVA Compass Bank denied the Plaintiff's application to finance the purchase of an automobile, citing the Trans Union report as influencing its decision to deny her application.[7]

63. All actions taken by employees, agents, servants, or representatives of the Defendants were taken in the line and scope of such employment, agency, or representation.

64. Defendants are liable to Plaintiff under *respondeat superior* for the wrongful, intentional, and negligent acts, errors, and omissions of their employees and agents.

65. The Defendants all know that keeping balances on credit reports is "a powerful tool" to coerce payment of alleged debts.[8]

66. The inaccurate information contained in the Trans Union and Equifax reports harmed the Plaintiff, her reputation, her ability to obtain credit, and cost her money in the form of higher finance charges, less credit availability, and was frustrating, time-consuming, embarrassing, and distressing.

67. These inaccurate credit reports continue to damage the Plaintiff's reputation, emotional wellness, and ability to obtain credit.

68. Credit inquiries made by alleged creditors of a consumer have a tendency to reduce such a person's apparent creditworthiness and ability to borrow.

69. Midland's unauthorized inquiries into Plaintiff's credit reports did in fact have a negative impact on the Plaintiff's credit profile and ability to access credit.

---

7    *See Exhibit L.*

8    *See* Sullivan v. Equifax, 01-cv-4336 (E.D. Pa. 2002), quoting Rivera v. Bank One, 145 F.R.D. 614 (D.P.R. 1993).

70. Midland's unauthorized inquiries into the Plaintiff's credit reports needlessly invaded the Plaintiff's privacy, which is a well-established and legally cognizable interest of all American citizens.  Griswold v. Connecticut, 381 U.S. 479 (1965); 15 U.S.C. §6801.

71. The Plaintiff's personal financial information was unlawfully appropriated by Midland's impermissible credit inquiry.

72. The Defendants knew or should have known that their actions were illegal and were virtually certain to harm the Plaintiff.

73. It is a pattern and practice of the Defendants to wrongfully handle consumer reports and disputes after collection lawsuit judgments in favor of consumers like the Plaintiff.

COUNT ONE AGAINST MIDLAND & MCM: 15 U.S.C. §1692e

74. Plaintiff realleges and incorporates by reference paragraphs 1 through 61 above.

75. 15 U.S.C.§1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

76. 15 U.S.C. §1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

77. Defendants Midland and MCM violated 15 U.S.C. §1692e(2)(A) by falsely representing to the Plaintiff and to the Mobile County Circuit Court that Plaintiff owed $5,882.96 to Midland.

78. 15 U.S.C. §1692e(8) prohibits the communication "to any person credit information which is known or which should be known to be false, including the

failure to communicate that a disputed debt is disputed."

79. Defendants Midland and MCM violated 1692e(8) by falsely representing to one or more consumer reporting agencies that the Plaintiff owed Midland money.

80. Defendants Midland and MCM violated 1692e(8) by falsely representing to one or more consumer reporting agencies that Plaintiff owed Midland $6,896, when in fact Plaintiff owed Midland $0.00.

81. Defendants Midland and MCM violated 1692e(8) by falsely representing to one or more consumer reporting agencies that Plaintiff was "past due" by $6,896 on a debt owed to Midland.

82. 15 U.S.C. §1692e(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

83. Defendants Midland and MCM §1692e(10) by falsely representing to at least one consumer reporting agency that:

(a)  it was a creditor of the Plaintiff;

(b) the Plaintiff owed Midland money;

(c) the Plaintiff had an existing and enforceable account which it needed to review.

84. These false representations were made in order to obtain sensitive personal and financial information from the Plaintiff's credit report, and to collect the debt Midland alleged was owed in the state court collection lawsuit.

85. Defendants Midland and MCM violations of 15 U.S.C. §1692e have caused the Plaintiff damages as stated above.

86. As a result of Defendants Midland and MCM violations of the 15 U.S.C. §1692e, Plaintiff is entitled to actual damages, statutory damages, expenses, costs, and reasonable attorney's fees.

COUNT TWO AGAINST MIDLAND AND MCM:

COUNT FOUR AGAINST MIDLAND AND MCM: 15 U.S.C. §1681b

87. Plaintiff realleges and incorporates by reference paragraphs 1 through 74.

88. Defendants Midland and/or MCM obtained, viewed, or otherwise made use of a consumer report relating to the Plaintiff in May and/or July of 2016.

89. Defendants had no legitimate purpose for obtaining or using Plaintiff's credit report.

90. Consumer credit reports contain sensitive information about a person's finances and lifestyle.

91. The Fair Credit Reporting Act recognizes this, and contains numerous provisions designed to protect consumers from unnecessary intrusion into their affairs.

92. Particularly, 15 U.S.C. §1681b(f) prohibits any person from obtaining or using a consumer report for any purpose other than those specific enumerated "permissible purposes" listed in 15 U.S.C. §1681b(a)(3).

93. In this case, the Plaintiff had no prior business relationship with either of the Defendants.

94. In July of 2016, the Plaintiff did not owe either of Defendants any money on any account which Defendants might have sought to collect or review.

95. The Defendants did not have a legitimate business need to obtain Ms. Delayo's credit report.

96. Courts have held that there is no permissible purpose to obtain a credit report for "account review" or "legitimate business needs" for debts which are no longer enforceable, even where such debts once existed.  Godby v. Wells Fargo Bank, NA, 599 F.Supp.2d 934 (S.D. Ohio 2008).

97. Nor did the Plaintiff ever provide Defendants with permission to obtain her reports.

98. The Defendants violated the Fair Credit Reporting Act by obtaining or using the Plaintiff's credit report without a permissible purpose for doing so.

99. The Defendants had actual knowledge that Midland's lawsuit against the Plaintiff had been resolved in Plaintiff's favor.

100. The Defendants' violation of the Fair Credit Reporting Act was negligent, and could have been easily avoided by undertaking a reasonable investigation.

101. Alternatively, Defendants' violation of 1681b was intentional or reckless, and done without any regard for whether they had a legitimate purpose for obtaining Plaintiff's report.

102. The Defendants' violation of the Fair Credit Reporting Act has harmed the Plaintiff by, *inter alia*, damaging her credit rating and reputation.

103. For such violation, the Defendants are liable to the Plaintiff for actual damages, costs, and attorney's fees, pursuant to 15 U.S.C. §1681o.

104. For their willful violations of the Fair Credit Reporting Act, the Defendants are liable to the Plaintiff for actual damages, statutory damages of up to $1,000,

punitive damages, costs, and attorney's fees, pursuant to 15 U.S.C. §1681n.

## COUNT THREE AGAINST MIDLAND AND MCM: 15 U.S.C. §1681s-2(b)

105. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 61.

106. The Plaintiff sent multiple letters to consumer reporting agencies explaining that she did not owe Midland for the alleged account.

107. Midland and MCM received notice of the Plaintiff's dispute from at least one consumer reporting agency.

108. Midland failed to conduct a reasonable investigation into the Plaintiff's dispute.

109. MCM failed to conduct a reasonable investigation into the Plaintiff's dispute.

110. Midland failed to review all relevant information relating to the Plaintiff's dispute.

111. MCM failed to review all relevant information relating to the Plaintiff's dispute.

112. Midland failed to notify each consumer reporting agency that its reporting of the Plaintiff's liability on the alleged account was incorrect.

113. MCM failed to notify each consumer reporting agency that its reporting of the Plaintiff's liability on the alleged account was incorrect.

114. Midland failed to modify, delete, or permanently block the reporting of the alleged account against the Plaintiff, even after it became clear that such information as it had reported against her could not be verified.

115. MCM failed to modify, delete, or permanently block the reporting of the alleged

account against the Plaintiff, even after it became clear that such information as it had reported against her could not be verified.

116. Midland and MCM continued to furnish inaccurate information regarding the Plaintiff to consumer reporting agencies, even after learning that she disputed such information.

117. Had Midland or MCM conducted a reasonable investigation into Plaintiff's disputes, the alleged Midland account would have been deleted.

118. The inaccurate information furnished by Midland and MCM to the consumer reporting agencies proximately caused damage to the Plaintiff in the following ways:

(a) It harmed her ability to obtain credit;

(b) It increased the cost of what credit the Plaintiff could obtain;

(c) It damaged her reputation and emotional well being;

(d) The Plaintiff spent time and money seeking to correct Defendants' errors.

119. Midland and MCM's failures to adequately investigate Plaintiff's disputes and correct their reporting was done willfully or with reckless disregard for the Plaintiff's rights.

120. Alternatively, their failures were negligent.

121. The Fair Credit Reporting Act requires that furnishers of consumer credit information undertake reasonable and prompt investigations into consumer disptues.  15 U.S.C. §1681s-2(b).

122. Midland and MCM have violated the Fair Credit Reporting Act by failing to perform the reinvestigation duties required of them by 15 U.S.C. §1681s-2(b).

123. For their violations of 15 U.S.C. §1681s-2(b), Midland and MCM are liable to the Plaintiff for all damages sustained as a result, punitive damages, plus statutory damages of up to $1,000, plus costs and attorney's fees.  15 U.S.C. §1681o & §1681n.

## COUNT ONE AGAINST TRANS UNION: 15 U.S.C. §1681i

124. Plaintiff realleges and incorporates by reference paragraphs 1 through 61 above.

125. In 2016, TransUnion published at least one consumer credit report containing false information regarding the Plaintiff.

126. Specifically, TransUnion published at least one consumer report relating to the Plaintiff which indicated that the Plaintiff owed an unpaid debt of over $6,800 to Midland.

127. TransUnion published at least one consumer report in 2016 which indicated that the Plaintiff was "past due" for $6,896 on a debt to Midland.

128. The Plaintiff disputed the alleged Midland account with TransUnion and provided the information needed to investigate her dispute.

129. TransUnion received the Plaintiff's disputes.

130. TransUnion did not correct the Plaintiff's credit report.

131. Instead, TransUnion continued to report that Plaintiff owed a large unpaid debt to Midland.

132. TransUnion failed to conduct a reasonable investigation into the Plaintiff's dispute.

133. TransUnion failed to forward all relevant information regarding the Plaintiff's dispute to the furnishers of such information.

134. TransUnion failed to delete or modify the inaccurate information which were included in its reports regarding the Plaintiff.

135. TransUnion continues to publish inaccurate information regarding the Plaintiff.

136. TransUnion has previously stated that it is obliged to rely upon whatever public records state about a consumer debt that has been tried before a state court.

137. For example, had Plaintiff lost the collection lawsuit and a judgment entered in favor of Midland, TransUnion would have told the Plaintiff that they were bound by the state court judgment saying that Plaintiff owed the money.

138. TransUnion, however, refused to rely upon what the state court's actual judgment in Plaintiff's favor.

139. Despite knowing that the state court had issued a judgment in Plaintiff's favor, TransUnion has abdicated its obligations under state and federal law and chosen to merely "parrot" whatever its customers, Midland and MCM, have told it to say.

140. TransUnion has a policy to favor its paying customers (debt collectors like Midland and MCM) instead of what consumers and state courts say about debts.

141. The primary reason for this policy is that furnishers of information like Midland and MCM pay millions of dollars annually to TransUnion.

142. TransUnion violated 15 U.S.C. §1681i by:

   (a) Failing to delete inaccurate information in the Plaintiff's credit file, despite having actual notice of such inaccuracies;

(b) Failing to conduct an adequate reinvestigation;

(c) Failing to forward all relevant information to Midland or MCM;

(d) Failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file;

(e) Relying upon "verification" of disputed information from a source which TransUnion knew or should have known to be unreliable.

143. As a result of TransUnion's violations of 15 U.S.C. §1681i, the Plaintiff suffered damages as described above.

144. TransUnion's actions (and inaction) in handing the Plaintiff's disputes were willful, rendering it liable to the Plaintiff for statutory damages of up to $1,000, punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n, as well as costs and attorneys' fees.

145. Alternatively, TransUnion's actions were negligent, rendering it liable to the Plaintiff for actual damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681o.

### COUNT TWO AGAINST TRANS UNION: 15 U.S.C. §1681e

146. Plaintiff realleges and incorporates by reference paragraphs 1 - 61 and 111-126 above.

147. The inaccuracies on Plaintiff's credit report were easily preventable, and were only published due to a failure of TransUnion to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of its consumer reports regarding the Plaintiff.

148. TransUnion has no established procedure to ensure that accounts litigated in

collection lawsuits concluded by judgments for consumers are accurately reflected in their consumer reports.

149. Alternatively, TransUnion failed to follow any procedures to ensure that accounts litigated in collection lawsuits concluded by judgments for consumers are accurately reflected in their consumer reports.

150. Had TransUnion established and followed a procedure to ensure the proper reporting of such accounts, it would not have published inaccurate information regarding the Plaintiff.

151. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of its credit reports and credit files regarding the Plaintiff.

152. As a result of these failures and the consequently inaccurate credit reports published against the Plaintiff, the Plaintiff has suffered damages as described above.

153. TransUnion's action and inaction was willful, rendering it liable to the Plaintiff for actual and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n, as well as costs and attorney's fees.

154. Alternatively, TransUnion's actions were negligent, rendering it liable to the Plaintiff for actual damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681o.

COUNT ONE AGAINST EQUIFAX: 15 U.S.C. §1681i

155. Plaintiff realleges and incorporates by reference paragraphs 1 through 61 above.

156. In 2016, Equifax published at least one consumer credit report containing false

information regarding the Plaintiff.

157. Specifically, Equifax published at least one consumer report relating to the Plaintiff which indicated that the Plaintiff owed an unpaid debt of over $6,800 to Midland.

158. Equifax published at least one consumer report in 2016 which indicated that the Plaintiff was "past due" for $6,896 on a debt to Midland.

159. The Plaintiff disputed the alleged Midland account with Equifax and provided the information needed to investigate her dispute.

160. Equifax received the Plaintiff's disputes.

161. Equifax did not correct the Plaintiff's credit report.

162. Instead, Equifax continued to report that Plaintiff owed a large unpaid debt to Midland.

163. Equifax failed to conduct a reasonable reinvestigation into the Plaintiff's dispute.

164. Equifax failed to forward all relevant information regarding the Plaintiff's dispute to the furnishers of such information.

165. Equifax failed to delete or modify the inaccurate information which were included in its reports regarding the Plaintiff.

166. Equifax continues to publish inaccurate information regarding the Plaintiff.

167. Equifax has previously stated that it is obliged to rely upon whatever public records state about a consumer debt that has been tried before a state court.

168. For example, had Plaintiff lost the collection lawsuit and a judgment entered in favor of Midland, Equifax would have told the Plaintiff that they were bound by

the state court judgment saying that Plaintiff owed the money.

169. Equifax, however, refused to rely upon what the state court's actual judgment in Plaintiff's favor.

170. Despite knowing that the state court had issued a judgment in Plaintiff's favor, Equifax has abdicated its obligations under state and federal law and chosen to merely "parrot" whatever its customers, Midland and MCM, have told it to say.

171. Equifax has a policy to favor its paying customers (debt collectors like Midland and MCM) instead of what consumers and state courts say about debts.

172. The primary reason for this policy is that furnishers of information like Midland and MCM pay millions of dollars annually to Equifax.

173. Equifax violated 15 U.S.C. §1681i by:

    (a) Failing to delete inaccurate information in the Plaintiff's credit file, despite having actual notice of such inaccuracies;

    (b) Failing to conduct an adequate reinvestigation;

    (c) Failing to forward all relevant information to Midland or MCM;

    (d) Failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file;

    (e) Relying upon "verification" of disputed information from a source which Equifax knew or should have known to be unreliable.

174. As a result of Equifax's violations of 15 U.S.C. §1681i, the Plaintiff suffered damages as described above.

175. Equifax's actions (and inaction) in handing the Plaintiff's disputes were willful,

rendering it liable to the Plaintiff for statutory damages of up to $1,000, punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n, as well as costs and attorneys' fees.

176. Alternatively, Equifax's actions were negligent, rendering it liable to the Plaintiff for actual damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681o.


COUNT TWO AGAINST EQUIFAX: 15 U.S.C. §1681e

177. Plaintiff realleges and incorporates by reference paragraphs 1 - 61 and 111-126 above.

178. The inaccuracies on Plaintiff's credit report were easily preventable, and were only published due to a failure of Equifax to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of its consumer reports regarding the Plaintiff.

179. Equifax has no established procedure to ensure that accounts litigated in collection lawsuits concluded by judgments for consumers are accurately reflected in their consumer reports.

180. Alternatively, Equifax failed to follow any procedures to ensure that accounts litigated in collection lawsuits concluded by judgments for consumers are accurately reflected in their consumer reports.

181. Had Equifax established and followed a procedure to ensure the proper reporting of such accounts, it would not have published inaccurate information regarding the Plaintiff.

182. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or follow reasonable

procedures to assure maximum possible accuracy in the preparation of its credit reports and credit files regarding the Plaintiff.

183. As a result of these failures and the consequently inaccurate credit reports published against the Plaintiff, the Plaintiff has suffered damages as described above.

184. Equifax's action and inaction was willful, rendering it liable to the Plaintiff for actual and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n, as well as costs and attorney's fees.

Alternatively, Equifax's actions were negligent, rendering it liable to the Plaintiff for actual damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681o.

WHEREFORE, PREMISES CONSIDERED, Your Plaintiff respectfully prays this Honorable Court Issue a Judgment for the following:

A) Against Midland and MCM and for the Plaintiff, for actual damages arising from the Defendants' violations of the Fair Debt Collection Practices Act;

B) Against Midland and MCM and for the Plaintiff, for statutory damages of One Thousand Dollars ($1000) from each for their violations of the Fair Debt Collection Practices Act;

C) Against Midland, MCM, MCM, TransUnion, and Equifax and for the Plaintiff, for actual damages and punitive damages for Defendants' violations of the Fair Credit Reporting Act;

D) Against Midland, MCM, MCM, Equifax, and Equifax and for the Plaintiff, for statutory damages of One Thousand Dollars from each Defendant for their

violations of the Fair Credit Reporting Act;

E) Costs, expenses, and reasonable attorneys fees incurred in bringing this action;

F) For such other, further, and general relief as Your Honor deems just and proper.

### PLAINTIFF DEMANDS A TRIAL BY JURY

RESPECTFULLY SUBMITTED this the 9th Day of January, 2017.

/s/ Judson E. Crump
Judson E. Crump
Attorney for Plaintiff

Judson E. Crump, PC
250 Congress Street
Mobile, AL 36603
251.272.9148
judson@judsonecrump.com